UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jesus Rafael Roman Rodriguez, | File No. 23-cv-3911 (ECT/JFD) |
| Petitioner, | |
| v. | **OPINION AND ORDER** |
| Maria Luisa Sanchez Noriega, | |
| Respondent. | |

---

Michael Boulette and Laura Elaine Kvasnicka of Taft Stettinius & Hollister LLP, Minneapolis, MN, for Petitioner Jesus Rafael Roman Rodriguez.

---

Petitioner Jesus Rafael Roman Rodriguez ("Father") filed a verified Petition for Return of Child against Respondent Maria Luisa Sanchez Noriega ("Mother"), alleging that Mother removed their shared child from Mexico in violation of Father's custody rights. ECF No. 1.  Father alleges Mother and child are currently residing in Saint Paul, Minnesota. Father seeks a temporary restraining order under Federal Rule of Civil Procedure 65(b) that would, among other things, enjoin Mother from removing the child from Minnesota pending expedited proceedings on the Petition for Return.  The motion will be granted because (1) Father has shown there is a significant risk that giving Mother notice of the motion would prompt her to remove the child from Minnesota and attempt to conceal their whereabouts, and (2) Father has shown that the *Dataphase* factors favor issuance of the requested temporary restraining order.

I

Father and Mother are the parents of minor child, R.R.S. Pet. [ECF No. 1] ¶ 4. R.R.S. was born in Mexico in 2018 and resided there until her removal in 2021. *Id.* ¶¶ 4, 9, 17; Exs. A–B [ECF No. 1-1]. Father alleges that in May 2021, Mother removed R.R.S. from Mexico and brought her to the United States. Pet. ¶ 17. Mother and R.R.S. lived initially in Texas. *Id.* ¶ 24. Upon learning Mother and R.R.S. were in Texas, Father attempted to retain counsel in Texas who could represent him in seeking the child's return. *Id.* Mother moved the child from Texas before Father was able to bring suit there. *Id.* In June or July 2022, Father learned via Facebook that Mother and R.R.S. were residing in Saint Paul, Minnesota. *Id.* ¶ 25. Based on video calls with R.R.S., Father believes R.R.S. is enrolled in daycare in Saint Paul, and that Mother and R.R.S. continue to reside there. *Id.* ¶¶ 3, 16. Except for weekly video calls, Father has not seen R.R.S. since May 8, 2021. *Id.* ¶ 26. Mother has threatened that if Father continues to request or seek information regarding her and R.R.S.'s location, Mother will cut off communication between Father and R.R.S. *Id.* ¶ 23.

On December 29, 2023, Father filed a verified petition for return of R.R.S. pursuant to the Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "Convention"),[1] Oct. 25, 1980, the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001–11, and the Minnesota Uniform Child Custody

---

[1] The United States and Mexico are signatories to the Convention. *Status Table*, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table (last visited Jan. 11, 2024).

and Jurisdiction and Enforcement Act (UCCJEA), Minn. Stat. § 518D.101 *et seq.* Pet. ¶¶ 1, 31. That same day, Father filed an *ex parte* motion for an accelerated hearing and a request for a temporary restraining order. ECF No. 3. The motion for a temporary restraining order primarily seeks to enjoin Mother from removing R.R.S. from Minnesota pending expedited proceedings on the Petition. On January 11, 2024, an *ex parte* hearing was held regarding the request for temporary restraining order. ECF No. 9.

II

Federal Rule of Civil Procedure 65(b) authorizes a district court to grant injunctive relief in the form of a temporary restraining order. The Eighth Circuit's familiar *Dataphase* decision describes the list of considerations applied to decide whether to grant this relief. *Brooks v. Roy*, 881 F. Supp. 2d 1034, 1049 n.6 (D. Minn. 2012) ("Courts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order.") (citing *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989)). *Dataphase* requires consideration of: "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 956 (D. Minn. 1999) (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 112–14 (8th Cir. 1981) (en banc)). "The burden of establishing the four factors lies with the party seeking injunctive relief." *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018).

Under Rule 65(b), a district court may issue a temporary restraining order without notice to the adverse party if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). Absent good cause for extension, a temporary restraining order issued without notice to the adverse party must expire within fourteen days. Fed. R. Civ. P. 65(b)(2).

(A) The first *Dataphase* factor is likelihood of success on the merits. "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citations and internal quotation marks omitted). As the petitioner, Father bears the initial burden of establishing by a preponderance of the evidence that the child has been wrongfully removed or retained within the meaning of the Convention. 22 U.S.C. § 9003(e)(1)(A). The Convention provides that a child's removal or retention is wrongful if "it is in breach of rights of custody attributed to a person . . ., either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention," and if the petitioner was "actually exercis[ing]" those rights at the time. *Barzilay v. Barzilay*, 536 F.3d 844, 847 (8th Cir. 2008) (quoting Convention, art. 3). To establish a prima facie case for return under the Convention, Father must show three things: "First, he must show [Mexico] was [R.R.S.]'s habitual residence prior to removal . . . . Second, he must show

4

the removal of [R.R.S.] violated his custody rights under [Mexican] law. Third, he must show he was exercising his parental rights before [R.R.S.] was removed." *Tsuruta v. Tsuruta*, 76 F.4th 1107, 1110 (8th Cir. 2023) (citing *Barzilay v. Barzilay*, 600 F.3d 912, 917 (8th Cir. 2010)).

Father has satisfied his burden of showing he is likely to succeed on the merits of his Petition. (1) Mexico was R.R.S.'s habitual residence under the terms of the Convention. "A child's habitual residence is the place where a child is at home, at the time of removal or retention." *Tsuruta*, 76 F.4th at 1110 (internal quotations omitted). Father asserts R.R.S. was a habitual resident of Mexico from her birth in 2018 until her removal in 2021, and this assertion is supported by the child's Mexican birth certificate and documentation showing the child's daycare and school enrollment in Mexico. Pet. ¶ 9; Exs. A–B, E–H. (2) Father has shown his custody rights were violated. Father attached the family code of the State of Sinaloa ("Sinaloa Code") to the Petition, *see* Ex. D [ECF No. 1-1], which is the relevant source of law here regarding establishment of Father's custody rights. The Sinaloa Code provides that "[p]arental authority on the children is exercised by the parents." Sinaloa Code, art. 350. It further provides that "[i]n the event of separation of the persons exercising parental authority, *both* shall continue to comply with their duties and may agree on the terms of its application, particularly in matters related to the guardianship and custody of the minor children." Sinaloa Code, art. 351 (emphasis added). Where, as here, Father and Mother are separated, "both shall continue to comply" with their parental duties. Further, Father represents that although they never married or cohabitated, both Mother and Father voluntarily continued to share custody of and access

5

to R.R.S.  Pet. ¶¶ 6–7.  (3) Father alleges specific facts showing he exercised parental rights before R.R.S. was removed.  Father asserts he had parenting time with R.R.S. Mondays through Saturdays from 8:00 a.m. to 8:00 p.m.  *Id.* ¶ 7.  When Father was at work, his parents cared for R.R.S.  *Id.*  Father thus has established his likelihood of success on the merits of his Petition sufficient to satisfy the first *Dataphase* factor.

(B) In line with *Dataphase*'s requirement that the movant show "the threat of irreparable harm to the movant in the absence of relief[,]" *Lexis-Nexis*, 41 F. Supp. 2d at 956, Rule 65 requires Father to show with "specific facts in an affidavit or a verified complaint" that "immediate and irreparable injury, loss, or damage will result." Fed. R. Civ. P. 65(b)(1)(A).  "The denial of a parent's lawful right to connect with and visit a child constitutes irreparable harm." *Rodriguez v. Molina*, 608 F. Supp. 3d 791, 797 (S.D. Iowa 2022).

Father has shown irreparable harm so as to satisfy *Dataphase* and warrant the issuance of a temporary restraining order without notice to Mother.  Father identifies the risk of Mother absconding with R.R.S. as the irreparable harm he will face if she is notified of the injunction.  In support, Father alleges that Mother has already removed R.R.S. to Texas without his permission in May 2021, and then removed her to Minnesota by July 2022.  Mother removed R.R.S. from Mexico after telling Father specifically that she would not remove R.R.S. without his permission.  Pet. ¶ 18; Exs. I, J [ECF No 1-1].  Further, Father alleges that Mother threatened to cut off contact between Father and R.R.S. if Father continued to ask for information about their address.  *Id.* ¶ 23.  And if Mother removes the child from Minnesota, Father will fall back to the square one in his efforts to locate and

6

seek return of R.R.S.  Father has already filed for R.R.S.'s return with Mexican central authorities, Pet. Ex. C, engaged an attorney in Texas before learning Mother moved to Minnesota, *id.* ¶ 24, engaged attorneys in Minnesota, and filed the instant Petition for Return, *see generally id*.  If Mother flees Minnesota with R.R.S., Father may be unable to locate the child or have great difficulty doing so.  That, in turn, would cause substantial delay in her return.  If Father locates Mother and R.R.S. in another jurisdiction, Father would be required to retain yet another attorney and restart the process of petitioning for the child's return.

(C) "The balance between that [irreparable] harm [to the movant] and the harm that the relief would cause to the other litigants[,]" *Lexis-Nexis*, 41 F. Supp. 2d at 956, favors issuance of the requested temporary restraining order.  Balanced against the irreparable harm likely faced by Father, the issuance of a temporary restraining order would cause comparatively little harm to Mother.  The restriction on Mother's traveling with R.R.S. would be of limited duration: not more than fourteen days, pursuant to Rule 65(b)(2).  Mother would be enjoined only from removing R.R.S. from Minnesota.  Mother would be permitted to travel.  So, for example, if she has work or other business across the border in Wisconsin, she would retain the right to travel there.  And Mother will be afforded a prompt hearing during which she may present a competing or different narrative and seek to expunge or limit any further injunctive relief.

(D) The public interest favors entry of the requested temporary restraining order.  In adopting the Hague Convention, Congress specifically noted that "[t]he international abduction or wrongful retention of children is harmful to their well-being" and "[p]ersons

should not be permitted to obtain custody of children by virtue of their wrongful removal or retention." 22 U.S.C. § 9001(a).  And the United States Supreme Court has indicated that the Hague Convention "is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence."  *Abbott v. Abbott*, 560 U.S. 1, 20 (2010).  On this record, it is difficult to hypothesize what public interest might be harmed through entry of the restraining order.

\*

Rule 65(c) says that a court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  The Hague Convention provides that "[n]o security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention."  Convention, art. 22; *see also Rodriguez v. Molina*, 608 F. Supp. 3d 791, 802 (S.D. Iowa 2022).  Regardless, in line with other cases to have addressed the question, I find that Mother is likely not to be financially harmed by the issuance of the requested temporary restraining order and, therefore, Father will not be required Father to provide security.  *See Sanchez v. Pliego*, No. 21-cv-1849 (MJD/BRT), 2021 WL 4026363, at \*5 (D. Minn. Sept. 3, 2021); *McIntyre v. Smith*, No. 21-cv-2182 (WMW/LIB), 2021 WL 5167280, at \*4 (D. Minn. Oct. 7, 2021).

**ORDER**

Based on the foregoing, and on the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Petitioner Jesus Rafael Roman Rodriguez's Request for Temporary Injunction [ECF No. 3] is **GRANTED IN PART**.²

2. Pursuant to 22 U.S.C. § 9004(a), minor child R.R.S. shall not be removed from Minnesota for fourteen days following issuance of this Order.

3. The United States Marshal shall serve Respondent with process and copies of pleadings filed to date.

4. Proceedings within the United States regarding custody and care of R.R.S., if any, shall be stayed pursuant to Article 16 of the Convention.

5. Petitioner and Respondent shall appear before this Court on **Wednesday, January 24, beginning at 2:00 p.m.**, in Courtroom 7A of the United States District Court for the District of Minnesota, located at 316 North Robert Street in Saint Paul, Minnesota. The initial appearance shall be considered an initial show cause hearing and scheduling

---

² While this Order tracks Father's Motion [ECF No. 3] in many respects, it differs in other material ways. First, the Motion seeks to order the United States Marshals to serve Mother with a warrant of arrest. That request is denied. Mother shall only be served with a warrant of arrest if she violates this Order by removing R.R.S. from Minnesota within fourteen days following issuance of this Order. Second, Father seeks to order Mother to remain in Minnesota. As described above, Mother is free to travel. She may not, however, remove R.R.S. from Minnesota within the fourteen days described. Third, Father seeks to order Mother to provide her and R.R.S.'s travel documents to this Court. That request is denied. Father cites the expiration of R.R.S.'s travel documents as a cause of worry, *see* Pet. ¶ 26; there is no reason to order the documents to be turned in.

hearing, so that a date may be set for an expedited evidentiary hearing on the merits of the Petition for Return.

6. If Respondent fails to appear at that date and time, or if she fails to contact the Court in advance of that date and time (for example, to request that the hearing be scheduled on a different date or at a different time), the Court shall issue a warrant for Respondent's arrest and appearance for a contempt hearing.

7. Pursuant to Federal Rule of Civil Procedure 65(b)(2), this temporary restraining order shall expire not greater than fourteen days from the date it is issued, unless extended by the Court for good cause shown.

Dated: January 12, 2024  
at 2:35 p.m.

s/ Eric C. Tostrud  
Eric C. Tostrud  
United States District Court